UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL J. M.,

                              Plaintiff,

    v.                                                                                                 No. 8:23-CV-00683
                                                                                                              (BKS/CFH)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

**APPEARANCES:**                                                **OF COUNSEL:**

OLINSKY LAW GROUP                                          HOWARD D. OLINSKY, ESQ
250 S. Clinton St. Ste. 210
Syracuse, New York 13202
Attorneys for Plaintiff

SOCIAL SECURITY ADMINISTRATION              FERGUS KAISER, ESQ.
OFFICE OF THE GENERAL COUNSEL
Office of Program Litigation, Office 2
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for Defendant

**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION & ORDER

      This matter was referred to the undersigned for report and recommendation by the Honorable Brenda K. Sannes, Chief United States District Court Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.  This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits.  Both parties have filed briefs, and plaintiff filed a reply.  *See* Dkt. Nos. 11, 13, 14.  For the

reasons discussed below, the Court recommends the Commissioner's decision be vacated, and Plaintiff's cause be remanded back to the Social Security Administration for further proceedings consistent with this Report-Recommendation & Order.

## I. Background & Procedural History

Plaintiff was born on July 19, 1972. T. at 311.[1] He has a high school diploma and has completed some college courses. T. at 51. On August 5, 2020, Plaintiff filed an application for Disability Insurance Benefits ("DIB") alleging disability beginning February 14, 2020. *Id.* He alleges disability as a result of post-concussion syndrome from a head injury. T. at 342. Plaintiff's application was initially denied on December 15, 2020. *Id.* at 107. He submitted a request for reconsideration on January 28, 2021. *Id.* at 150. Plaintiff's claim was reconsidered and denied on June 21, 2021. *Id.* at 135. Plaintiff requested a hearing before an ALJ on July 20, 2021, and a hearing by teleconference software was scheduled for November 10, 2021. *Id.* at 176, 209.

Administrative Law Judge Dale Black-Pennington ("the ALJ") conducted the November 10, 2021, hearing, and heard the testimony of Plaintiff, represented by Diane Williamson. *See* T. at 38-69.[2] Plaintiff testified to suffering from post-concussion syndrome after a vehicular collision during his work as a corrections officer. *Id.* at 53. Plaintiff stated that he experiences migraine headaches; extreme fatigue, which affects his focus and memory; balance issues; dizzy spells; loss of consciousness; and

---

[1] The Administrative Transcript is found at docket number ("Dkt. No") 7. The Court will refer to citations from the Administrative Transcript as "T." and will cite to the Administrative Transcript's Bates-stamped page numbers, rather than the pagination generated by the Court's electronic filing system ("CM/ECF"). All other citations to docket entries refer to the pagination generated by CM/ECF.

[2] Plaintiff's representative at the administrative hearing is misidentified as "Howard Olinsky, Attorney for Claimant" – Diane Williamson is the only representative who appears in the transcript of either administrative hearing. *Id.* at 38, 40 (also misstating that "[t]he Claimant appeared in person."); 41, 72-73 ("Ms. Williamson" being identified as Plaintiff's representative.)

depression.  *Id.* at 54.  The first administrative hearing ran past its scheduled time, necessitating a second hearing to take the testimony of the Vocational Expert ("VE").  *Id.* at 68.  On March 1, 2022, VE Zachary Prosper provided testimony in response to questioning by the ALJ and Plaintiff's representative.  *Id.* at 76-83.

On April 13, 2022, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act ("SSA").  T. at 29-30.  Plaintiff requested the Social Security Appeals Council review the ALJ's decision on May 11, 2022.  *Id.* at 11.  The ALJ's decision became the final decision of the Commissioner for Social Security when the Appeals Council denied Plaintiff's request for review on April 17, 2023.  *Id.* at 1.  Plaintiff timely commenced this action on June 8, 2023, challenging the Commissioner's decision.  *See* Dkt. No. 1.

## II. Legal Standards[3]

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1388(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning

---

[3] Although the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotations marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id.* § 423(d)(1)(A). A medically-determinable

4

impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. *See id.* § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry*, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The plaintiff bears the initial burden of proof to establish each of the first four steps. *See DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. *See id.* (citing *Berry*, 675 F.2d at 467).

### III. The ALJ's Decision

In her April 18, 2022, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. T. at 20-21. As an initial matter, the ALJ noted that Plaintiff meets the insured status requirements of the SSA through December 31, 2024. *Id.* at 21. At Step One, the ALJ determined that Plaintiff had not been engaged in substantial gainful activity since February 14, 2020, because, although Plaintiff had worked, it was an "unsuccessful work attempt" that ended as a result of his impairments. *Id.* At Step Two, the ALJ determined that Plaintiff had the following severe impairments: "post-concussion syndrome, cervicalgia, traumatic brain injury, migraine, [and] adjustment disorder." *Id.* at 22. At Step Three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id*.

6

At Step Four, based on the above-stated impairments, the ALJ determined that Plaintiff has the RFC to perform light work with the following exceptions:

> avoid even moderate exposure to loud noise; and avoid even moderate exposure to hazards such as heavy moving mechanical parts/machinery, unprotected heights and industrial vibrations; able to understand, remember and apply simple and some detailed instruction and directions; able to perform simple routine tasks commensurate with SVP 1-2; able to have frequent contact with the public; able to have frequent contact with co-workers and supervisors; able to occasionally manage change to the workplace environment and/or tasks.

T. at 23.  The ALJ noted that Plaintiff is unable to perform any past relevant work, that he was a "younger individual age 18-49" at the alleged onset date, and that he has at least a high school education.  *Id.* at 28.  The ALJ did not consider transferability of job skills because "using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled' whether or not the claimant has transferable job skills.  *Id.* (citing 20 C.F.R. § 404, Subpart P, Appendix 2).  The ALJ then determined, at Step Five, that there are jobs in significant numbers in the national economy which Plaintiff would be capable of performing.  *Id.*  Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined by the SSA, from February 14, 2020, until the date of the ALJ's decision, April 18, 2022.  *Id.* at 29.

## IV. Arguments

Plaintiff argues that the ALJ erred by failing to "acknowledge and evaluate the physical opinions of PA Stout" in crafting the RFC as well as by failing to properly analyze the persuasiveness of the medical opinions.  Dkt. No. 11 at 10-11.   Plaintiff specifically contends that the ALJ did not assess the consistency of PA Stout or Dr.

Bartoszek's opinions and argues that the ALJ failed to consider the medical opinions' consistency with each other. *Id.* at 11-13.

Defendant argues that the ALJ properly considered the objective medical evidence and other evidence in accordance with the Agency's regulations. Dkt. No. 13 at 7-8. Defendant argues that meaningful review is not frustrated because the ALJ's consideration of the consistency and supportability factors can be gleaned from the decision as a whole. *Id.* at 9. Defendant also argues that the ALJ was not required to assess consistency between medical opinions that she had found to be unsupported. *Id.* at 12. Defendant argues finally that the ALJ sufficiently addressed PA Stout's opinion in her consideration of the medical opinion and record evidence. *Id.* at 13.

In reply, plaintiff avers that the substantial evidence standard is not applicable to a question of legal error; thus, the ALJ's decision should not be affirmed even if it could be supported by substantial evidence. Dkt. No. 14 at 1. Plaintiff reiterates that he is arguing that the ALJ failed to articulate her consideration of the evidence, which is an error separate from the failure to meet the substantial evidence standard. *Id.* at 2-4.

## V. Analysis

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Lamay v. Comm'r of Soc. Sec*, 562 F.3d 503, 507 (2d Cir. 2009). To meet the applicable legal standard, an ALJ must consider the medical opinions and prior administrative medical findings in a claim according to the factors outlined in 20 C.F.R. § 404.1520c(c), paying special attention to "explain how [they] considered the supportability and consistency factors" in §§ 404.1520c(c)(1)-

8

(2).  20 C.F.R. § 404.1520c(a), (b)(2).  An ALJ must consider "the factors in paragraphs (c)(3) through (c)(5)," but need only articulate that consideration if they are confronted by "[t]wo or more medical opinions or prior administrative medical findings about the same issue [that] are both equally well supported [] and consistent with the record [] but are not actually the same . . . ."  *Id.* §§ 404.1520c(b)(2), (3) (citing *id.* §§ 404.1520c(c)(1), (2)).  Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* § 404.1520c(c)(1).  Regarding consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* § 404.1520c(c)(1).

     Although "'an ALJ does not have to state on the record every reason justifying a decision' and 'is not required to discuss every single piece of evidence submitted,'" he or she must at the very least "articulate in [his] determination or decision how persuasive [he or she found] all of the medical opinions and all of the prior administrative medical findings."  *Ryan v. Comm'r of Soc. Sec.*, No. 21-2947-cv, 2022 WL 17933217 at *2 (2d Cir. Dec. 27, 2022) (citing *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012)).  An ALJ may not simply conclude that an opinion is well supported or consistent with the record; the ALJ must explain how they reached those conclusions.  *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293 at *2 (2d Cir. Jun. 17, 2022).

However, the fact that an ALJ's decision "must be read as a whole" does not excuse an ALJ's failure to apply the correct legal standards. *Maria S. v. Kijakazi*, 3:21-CV-0177 (DEP), 2022 WL 4619861, at *5 (N.D.N.Y. Sep 30, 2022). After a "searching review of the record," the undersigned cannot say with certainty that the substance of the regulations has not been traversed; thus, it is recommended that Plaintiff's case be remanded further proceedings. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

### A. ALJ's Persuasiveness Analysis

The ALJ found Dr. Hartman's opinion to be the "most persuasive." T. at 27. He stated that "[i]t is supported by examination and clinical findings, and is generally consistent with the evidence of record." *Id.* The ALJ found P.A. Stout's opinion to be "not persuasive because it is unsupported by treatment notes, which indicate that the claimant's examination findings were largely normal." *Id.* The ALJ determined that Dr. Bartoszek's opinion was "not persuasive because it is not consistent with the treatment records, including the largely normal mental status examinations as seen in Dr. Bartoszek's own progress notes." T. at 28.

As noted, plaintiff argues that "[t]he ALJ has failed to conduct a proper supportability or consistency analysis in any of these opinions, frustrating meaningful review of the ALJ's decision." Dkt. No. 11 at 11. This is correct; the ALJ did not adequately explain what "objective medical evidence and supporting explanations" these three medical opinions contain, or what "evidence from other medical sources in the claim" they comport with. 20 C.F.R. 404.1520c(c)(1), (2). Earlier in her decision, the ALJ summarized materials from the practices of these three medical sources. *See* T. at 25-26. This summary does not address the opinions themselves, nor does it

address the "most important factors," supportability and consistency, which bear on their persuasiveness.  20 C.F.R. § 404.1520c(b)(2).

Beginning with Dr. Hartman's opinion, which the ALJ found "most persuasive," Plaintiff was diagnosed with "[a]djustment disorder with mixed anxiety and depressed mood."  T. at 27, 832.  Plaintiff "reported difficulty falling asleep due to racing thoughts, and napping during the day."  T. at 26 (referencing T. at 829-30.)  She discussed that plaintiff experiences "chronic fatigue, and increased appetite and weight gain," with increasing depression, "short-term memory deficits and word finding difficulties," and nervousness in crowds and during "any pressure situation."  T. at 26 (referencing T. at 829-30.)  She noted that, during Plaintiff's mental status examination, his "[s]peech was clear and fluent," his thoughts were "[c]oherent and goal directed," his affect was "anxious, yet pleasant," with a nervous mood, a "clear" sensorium, and "[h]e was alert and oriented x3."  T. at 830-31.  Plaintiff's "recent and remote memory skills appeared to be mildly impaired," with cognitive functioning "near the average range" and "a nearly average general fund of information," "[f]air insight," and "[f]air to good judgment."  T. at 831.

Plaintiff also discussed his activities of daily living ("ADL") with Dr. Hartman, and the ALJ summarized this discussion.  *See* T. at 26 (referencing T. at 831-32.)  Plaintiff "can do his own cooking, cleaning, and laundry, but will avoid these things due to pain or lack of motivation."  T. at 26 (referencing T. at 831.)  Plaintiff "occasionally goes shopping by himself," "is able to drive," and "can manage money but is sometimes forgetful with bills."  T. at 26 (referencing T. at 831-32.)  The ALJ reiterated Dr. Hartman's assignment of mild and moderate limitations, with the most serious being

11

"[m]oderate difficulty sustaining concentration.  Moderate difficulty regulating his emotions."  T. at 27 (quoting T. at 832.)

The ALJ discussed both P.A. Stout's opinion and his treatment notes from Alice Hyde Medical Center.  *See* T. at 27, 26.  The ALJ determined that P.A. Stout's opinion was "not persuasive because it is unsupported by treatment notes, which indicate that the claimant's examination findings were largely normal."  T. at 27.  P.A. Stout "opined that [Plaintiff] could walk two blocks without resting, can sit about four hours, and stand/walk for less than two hours total in an eight-hour workday, and needs to be able to shift positions at will."  T. at 27 (referencing T. at 1790.)  P.A. Stout indicated that Plaintiff would need approximately 4 unscheduled 1-hour breaks per work week.  T. at 1790.  P.A. Stout assigned serious exertional and postural limitations: Plaintiff can never lift more than 50 pounds or climb ladders, and can only rarely lift 20 pounds or climb stairs.  T. at 1791.  He also opined that Plaintiff would miss "four days per month" and "be off task more than 20 percent of the workday."  T. at 27 (referencing T. at 1793.)

In her discussion of P.A. Stout's treatment records, the ALJ noted that Plaintiff "complained of mild headache, fogginess, and fatigue."  T. at 26 (referencing T. at 1837.)  At Plaintiff's examination on August 9, 2021, he did not "appear ill or fatigued."  T. at 26 (quoting T. at 1838.)  Plaintiff demonstrated "no apparent distress and no apparent discomfort.  Musculoskeletal and neurological findings were largely normal, but his mood was subdued."  T. at 27 (referencing T. at 1838-39.)  Plaintiff was diagnosed with "post-concussion syndrome, syncope and collapse, other fatigue, headache, disorientation, tinnitus, and cervicalgia."  T. at 26 (quoting T. at 1839.)  The ALJ also noted that Plaintiff's "headaches were more or less constant, but mild and he

has learned to live with them. He has occasional severe headaches which are helped by Nurtec." T. at 26 (referencing T. at 1839.)

The ALJ assessed Dr. Bartoszek's opinion last, noting that it "is not persuasive because it is not consistent with the treatment records, including the largely normal mental status examinations as seen in Dr. Bartoszek's own progress notes." T. at 28. The ALJ noted that Dr Bartoszek "opined that [Plaintiff] was limited or seriously limited in several mental abilities and aptitudes needed to perform work activities due to his experience of depressed mood and intermittent panic attacks, and that his mood/anxiety likely impact migraine headaches." T. at 28 (referencing T. at 1830-35.) Dr. Bartoszek identified Plaintiff's symptoms as "[d]ecreased energy," "[g]eneralized persistent anxiety," "[m]ood disturbance," "[e]motional withdrawal or isolation," and "[m]emory impairment – short, intermediate or long term." T. at 1830. Plaintiff was noted to be "[s]eriously limited, but not precluded" from maintaining regular attendance and punctuality, completing a normal workday and workweek without interruptions from psychologically-based symptoms, and interacting appropriately with the general public. T. at 1831. Dr. Bartoszek explained that Plaintiff's "[e]xperience of depressed mood and intermittent panic attacks impacts energy + consistent routine; Mood/anxiety likely impact migraine headaches." *Id.* The ALJ found this determination, along with Dr. Bartoszek's opinion "that [Plaintiff] would likely be off task 20 percent of the workday and he would miss about four days of work per month," to be inconsistent with Dr. Bartoszek's treatment notes. T. at 28.

The ALJ noted that plaintiff first visited Dr. Bartoszek at Upstate University Hospital on January 13, 2020. T. at 25 (referencing T. at 813.) During this visit, Plaintiff

13

"reported currently having mood changes with frustration, irritability, and anxiety, as well as cognitive changes including memory and concentration." *Id.* Dr. Bartoszek diagnosed Plaintiff as suffering from "cervicalgia, headache, post-concussion, and adjustment disorder with mixed anxiety and depressed mood." T. at 26 (referencing T. at 814.) The ALJ also discussed Plaintiff's appointments with Dr. Bartoszek through 2020 and 2021, noting that (1) Plaintiff reported "decreased symptoms" at a March 9, 2020, visit; (2) Plaintiff "had persisting improvements in his symptoms over time," but also noting that he "felt 8-percent recovered"; (3) on October 26, 2020, Plaintiff reported "an increase in headaches, fatigue, and cognitive symptoms since last August, with impact on mood and sleep; and (4) on November 9, 2020, Plaintiff "reported improvements in symptoms," but also "expressed disappointment in ways that his symptoms had taken him away from the very physically challenging lifestyle and activities that he enjoys." T. at 26 (referencing T. at 815, 824, 825.)

  The ALLJ' summary of the medical evidence of record is extensive, but does not meet the analysis and level of articulation 20 C.F.R. § 404.1520c requires. It does not address the "objective medical evidence and supporting explanations" that the opinions rely on or explain what "evidence from other medical sources in the claim" the opinions comport with. 20 C.F.R. § 404.1520c(c)(1), (2); *see* T. at 23-26. An ALJ's decision must be "read as a whole," but an ALJ's insufficient articulation of their consideration of the persuasiveness of the medical opinions generally cannot be bolstered by summaries of other evidence. *Maria S.*, 2022 WL 4619861, at *5. "[A]n ALJ must specifically set forth how they considered the consistency of a medical opinion in the analysis of the medical opinion, not merely refer to the other medical evidence at some

14

point in the decision." *Kathleen A. v. Comm'r of Soc. Sec.*, 3:20-CV-1034 (LEK), 2022 WL 673824, at *6 (N.D.N.Y. Mar. 7, 2022) (citing *Darla W. v. Comm'r of Soc. Sec.*, No 20-CV-1085, 2021 WL 5903286, at *7 (N.D.N.Y. Dec. 14, 2021)).  Here, the undersigned cannot sufficiently "'glean the rationale of [the] ALJ's decision'" from the evidence of record.  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).  The ALJ failed to meet the applicable standard in articulating her consideration of the opinions of Dr. Hartman, P.A. Stout, and Dr. Bartoszek.

Plaintiff also argues that the ALJ improperly failed to consider the consistency of the opinions with one another.  Dkt. No. 11 at 12-13.  Defendant argues that no such analysis is required, especially considering that the ALJ already found the opinions to be inconsistent with the medical evidence of record.  Dkt. No. 13 at 12.  As the undersigned has already concluded that the ALJ failed to adequately consider the consistency factor, it need not reach this argument.  As discussed above, the ALJ's articulation of the consistency of the medical opinions was erroneous, and, as will be examined <u>infra</u>, those errors require remand.

For the sake of completeness, however, the undersigned acknowledges that Defendant is partially correct on his first point: the text of the regulations does not explicitly require articulation of the consistency of the medical opinions with each other. Rather, it directs the ALJ to consider what "evidence from other medical sources and nonmedical sources in the claim" an opinion is consistent with.  20 C.F.R. § 404.1520c(c)(2).  However, "evidence from other medical sources" can encompass other medical opinions, as a medical opinion is a "statement from a medical source

15

about what [a claimant] can still do despite [their] impairments . . . ." *Id.* §§ 404.1520c(c)(2), 404.1513(a)(2).  Performing and articulating this analysis is a best practice, yet whether the absence of this analysis is an error requiring remand is a determination bade on a case-by-case basis.  *See Mallorie v. Comm'r of Soc. Sec.*, No. 3:21-CV-891 (MAD/ATB), 2022 WL 19078137, at *12 (N.D.N.Y. Dec. 22, 2022) (collecting cases), *adopted by*, 2021 WL 2563209 (N.D.N.Y. Mar. 17, 2023).  Defendant cites *Young v. Kijakazi* as an example of an ALJ's decision being affirmed despite a similar failure to consider the consistency of the medical opinions with each other.  *Young v. Kijakazi,* No. 20-CV-3604 (SDA), 2021 WL 4148733, at *10 (S.D.N.Y. Sep. 13, 2021).  However, in Young, the "opinions [were] in fact significantly *inconsistent* with one another in areas where they substantially overlap."  *Id.*  As discussed below, the ALJ's error here was not harmless error because two of these three medical opinions address, in a consistent fashion, Plaintiff's ability to maintain a regular schedule.

### B. Remand is Required

At the second administrative hearing, both the ALJ and Plaintiff's representative had the opportunity to examine the VE.  *See* T. at 72-83.  The ALJ elicited the following testimony:

> Q: What is the employer tolerance for time off task?
> A: Yes, Your Honor. My vocational opinion approximately ten percent or more time off task would preclude an individual sustaining competitive –
> Q: So, if an individual was spending less than ten percent off task routinely, that would not rule out employment?
> A: That is correct, Your Honor.
> Q: But ten percent or more would rule out competitive employment?
> A: Yes, Your Honor.

16

T. at 79-80.  The VE also testified that "approximately five to eight absences … throughout the year would be tolerated."  T. at 80.  Plaintiff's representative also examined the VE, engaging in the following colloquy:

> Q: Okay. If the hypothetical individual would need four unscheduled breaks a week for approximately an hour each break. It's important that these are unscheduled breaks. He can't just plan it, you know, during his lunch hour if he's going to be feeling dizzy or have a horrible headache. Would he be able to perform the jobs you identified?
> A: No. In my vocational opinion, someone's unscheduled breaks would be considered as a combination and my vocational opinion would preclude full-time attendance work.

T. at 82.

P.A. Stout's opinion, which the ALJ found "not persuasive," addresses these issues directly.  T. at 27; T. at 1790.  P.A. Stout indicated that Plaintiff would "sometimes need to take unscheduled breaks during an 8-hour workday."  T. at 1790.  As posed by Plaintiff's representative, these breaks would need to be one hour long, and could occur four times per week.  *Id.*  Dr. Bartoszek's opinion, which the ALJ also found "not persuasive," likewise addresses these issues.  T. at 28; *see* T. at 1832.  Dr. Bartoszek opined that plaintiff would be off-task approximately 20% of an 8-hour workday, and would be "seriously limited, but not precluded" from "[m]aintain[ing] regular attendance and be[ing] punctual within customary, usually strict tolerances" and "[c]omplet[ing] a normal workday and workweek without interruptions from psychologically based symptoms."  T. at 1831-32.

In short, P.A. Stout and Dr. Bartoszek both conclude that Plaintiff has limitations which would preclude him from competitive employment, based on the expert testimony of the VE.  T. at 79-80, 82, 1790, 1831-32.  The ALJ found P.A. Stout and Dr.

17

Bartoszek's opinions to be unpersuasive but did not adequately articulate her consideration of their persuasiveness; thus, her failure to adhere to the correct legal standard was legal error.  *See* T. at 27-28.  In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and, if so, whether substantial evidence supports the decision.  *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013).  "Failure to apply the correct legal standards is grounds for reversal."  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted).  As "the present record does not compel but one conclusion" under the correct legal standards, the Commissioner's decision should be reversed, and the matter remanded to the SSA for further consideration consistent with this report and recommendation.  *Johnson*, 817 F.2d at 986.

### VI. Conclusion

Based on the foregoing, the undersigned concludes that the ALJ's decision was not based on correct legal standards, and substantial evidence does not support her determination that Plaintiff was not under a disability within the meaning of the Social Security Act.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be **GRANTED**, Defendant's motion for judgment on the pleadings (Dkt. No. 13) be **DENIED**, and the Commissioner's decision be **reversed and remanded** for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g); and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on the parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: August 19, 2024
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge